CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 18 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 5:14-cr-51 |
| v. | ) |
| | ) |
| MICHAEL STEVEN BEEMAN | ) By: Hon. Michael F. Urbanski |
| | ) Chief United States District Judge |

## MEMORANDUM OPINION

Michael Steven Beeman pled guilty on October 6, 2015 to a variety of charges related to possession and transportation of child pornography. On April 28, 2017, he filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, raising claims of ineffective assistance of counsel. In response, the government filed a motion for summary judgment. The court held an evidentiary hearing on October 3, 2018. Upon review of the record and for the reasons set forth herein, the court concludes that Beeman has not stated any meritorious claim for relief under § 2255 and therefore **GRANTS** the United States' motion.

### A.

On January 21, 2014, state child pornography charges were filed against Beeman following his indictment by a grand jury sitting in Frederick County, Virginia. On July 15, 2014, Beeman, represented by Christopher Collins, attended a preliminary hearing during which three Frederick County deputy sheriffs and a civilian witness testified about the events surrounding the seizure of devices and the execution of a subsequently issued search warrant on January 14, 2014. Following the hearing, Collins filed a motion to suppress evidence that was allegedly seized in a manner violative of the Fourth Amendment. ECF No. 103, at 4-6.

On November 12, 2014, a federal grand jury in Charlottesville, Virginia returned a two-count indictment against Beeman, charging him with (Count 1) knowingly transporting visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. §2252(a)(1) and 2252(b)(1), and (Count 2) knowingly possessing visual depictions of minors engaged in sexually explicit conduct, including at least one depiction of a minor under 12 years of age in violation of 18 U.S.C. §2252(a)(4)(B) and 2252(b)(2). On December 4, 2014, following the federal indictment, the Commonwealth of Virginia filed a motion for dismissal by nolle prosequi, which was granted on February 3, 2015. The motion to suppress filed by Collins was never ruled on in state court. On December 16, 2014, Aaron Cook filed a notice of appearance as counsel for Beeman in the federal case and on December 22, 2014, Beeman was arraigned on the federal indictment.

On October 6, 2015, a superseding information was filed and, shortly thereafter, Beeman pled guilty pursuant to the plea agreement before a United States Magistrate Judge, who then issued a report and recommendation. ECF No. 44. Beeman pled guilty to Counts 1-5 of the superseding information, which charged him as follows: (Count 1) knowingly transporting child pornography in violation of §2252(A)(a)(1) and 2252(A)(b)(1); (Counts 2-4) knowingly possessing three matters containing child pornography, each of which included at least one distinct depictions involving a minor under 12 years of age in violation of §2252(A)(5)(B) and 2252(b)(2); (Count 5) knowingly possessing a separate matter containing child pornography in violation of §2252(A)(5)(B) and 2252(b)(2). Id. The report recommended that Beeman's plea of guilty to Counts 1-5 of the superseding information be accepted as knowing and voluntary. Id. In the plea agreement, Beeman waived his right to

appeal and waived his right to collaterally attack orders issued in this case unless filed on the basis of ineffective assistance of counsel.

The agreed-upon statement of facts in the plea agreement, signed by both Beeman and Cook, indicates that on January 14, 2014, while hospitalized at Winchester Medical Center for a period of several days following a suicide attempt, Beeman asked his dog-walker to bring to him at the hospital several electronic devices. The dog-walker reported to the Frederick County Sheriff's Office ("FCSO") that while drafting an email on Beeman's behalf on one of these devices, he observed pictures depicting naked minors. That same day, a search warrant was executed on Beeman's residence in Winchester, Virginia, resulting in the seizure of 250 electronic devices, 50 of which contained depictions of child pornography or evidence that child pornography had previously been viewed or stored on the device. The FCSO also uncovered a diskman containing a Hi-8 tape with recordings Beeman had produced showing him engaging in sexual acts with Minor A. Beeman admitted that in the 1980s, while employed by the United States Air Force in Florida, he developed a personal relationship with Minor A, who was often left in his care, custody, and control. Beeman video-recorded numerous occasions during which he sexually abused Minor A. Beeman also admitted to engaging in similar conduct with two other minors, and to downloading child pornography from the online newsgroup "EasyNews."

On October 27, 2015, noting that Beeman had filed no objections to the magistrate judge's report, this court adopted the report, thereby accepting the guilty plea. ECF No. 50. The court sentenced Beeman on April 4, 2016 to 360 months imprisonment. On April 28, 2017, Beeman filed the § 2255 motion presently before the court. The various arguments

3

comprising Beeman's motion are based on a theory of ineffective assistance of counsel. Beeman contends that Cook provided ineffective assistance both by (1) failing to file motions to suppress and for (2) failing to discuss the suppression of evidence with him "in any fashion" or provide him with "any information" pertaining to such motions. ECF 114, at 11. As a result of Cook's ineffective assistance, Beeman alleges that he did not make a fully informed and intelligent decision to plead guilty. ECF No. 102, at 1, 4. The government filed a motion for summary judgment in response on September 7, 2017, arguing, among other things, that Beeman's assertion of ineffective assistance of counsel is baseless because Cook's failure to file a motion to dismiss was "wholly reasonable" given that it would not have been meritorious and because Beeman failed to show any resulting prejudice. ECF No. 111, at 16. The government further asserts that Beeman's claim that he would not have pled guilty if properly advised is "likely based solely, or at least primarily, on dissatisfaction with the sentence he received." Id. at 15-16.

The court held an evidentiary hearing on October 3, 2018. Beeman testified that although Cook did in fact broach the possibility of filing suppression motions and actually showed him the motion drafted by Collins, he quickly dropped the subject after Cook stated that he saw no reason to file it. Beeman, however, stated that Cook did explain that as part of the plea deal, a condition of which was his not filing suppression motions, the government agreed not to bring production of child pornography and other charges. Cook also testified at the evidentiary hearing. He stated that he did discuss the possibility of filing motions to suppress with his client, as well as the potential ramifications of not accepting the government's plea deal. Cook also testified that because he did not believe the motion to

4

suppress the physical evidence collected during the January 14, 2014 search was a "slam dunk," he sought a favorable plea deal.

### B.

Federal prisoners, in custody, may collaterally attack their sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence (1) that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). To grant the government's motion for summary judgment, the court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

### C.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A meritorious ineffective assistance of counsel claim must demonstrate two things: first, that

5

counsel's performance was deficient; and second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish the first prong, the defendant must show "that counsel made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. In other words, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted). Additionally, reviewing courts strongly presume that only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

According to the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic without risking

6

an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014). In the context of guilty pleas, the Supreme Court recently recognized:

> There are certain differences between inadequate assistance of counsel claims in cases where there was a full trial on the merits and those, like this one, where a plea was entered even before the prosecution decided upon all of the charges . . . . Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial or, as in this case, even before the prosecution decided on the charges. The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

Premo v. Moore, 562 U.S. 115, 132 (2011). Premo addressed an ineffective assistance of counsel claim brought by a petitioner who alleged that his plea counsel should have sought suppression of a confession, and emphasized that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." Id. at 116-17. The Court further observed that an "attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after trial." Id. at 125.

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to

7

undermine confidence in the outcome." Id. at 694. In other words, a petitioner must show that, had counsel not made the alleged error, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (citing Strickland, 466 U.S. at 693-94)). In the context of collateral challenges to guilty pleas, Strickland's prejudice inquiry is "slightly modified," Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (quoting Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988)), and "focuses on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process,'" Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)), cert. denied, 134 S. Ct. 71 (2013), reh'g denied, 134 S. Ct. 725 (2013); see United States v. Akinsade, 686 F.3d 248, 253 (4th Cir. 2012) (citing Hill, 474 U.S. at 59). Therefore, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

## C.

"There is no reason for a court deciding an ineffective assistance of counsel claim to resolve both components of the inquiry if the defendant makes an insufficient showing on one." Merzbacher, 706 F.3d. at 363 (quoting Strickland, 466 U.S. at 697). In evaluating ineffective assistance of counsel claims after a guilty plea has been entered, statements made under oath at a plea colloquy affirming satisfaction with counsel are binding on the defendant, unless the contrary evidence is clear and convincing. Fields, 956 F.2d at 1299. In other words, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral

8

proceedings." Christian v. Ballard, 792 F.3d 427, 444 (4th Cir.), cert. denied, 136 S.Ct. 342 (2015) (citing and quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Moreover, a petitioner may not just allege that he would have insisted on going to trial absent the alleged ineffectiveness but also must convince the court that rejecting the plea bargain would have been rational under the circumstances. Id. at 452-53. A petitioner's "self-serving statements do not satisfy the 'prejudice' prong under Strickland." Sasser v. Director, Virginia Department of Corrections, 2017 WL 3219508, *5 (W.D.Va. 2017) (citing Christian, 792 F.3d at 452).

### D.

Beeman first contends that Cook rendered ineffective assistance of counsel by (1) not moving to suppress all evidence seized from his residence on January 14, 2014. He asserts that Cook also erred by (2) failing to apprise him of facts and law supporting such a motion. Had Cook done so, Beeman claims that he would not have pled guilty. Beeman claims that Cook was ineffective for failing to file a motion to suppress along the lines of the one filed on November 14, 2014, by Christopher Collins, Beeman's counsel in state court:

> On January 14, 2014, deputies arrived at the defendant's home where Mr. Robertson meet [sic] them outside and showed the deputies the photo he found on the iPad. Deputies then inquired whether there were more electronic devices in the home and Mr. Robertson advised that there were. Deputies, without a warrant, then entered the home and collected those items which were two more iPads.
>
> Deputies then took all electronic devices to Investigator Galbreath of the Frederick County Sheriff's Office for him to review the images. Based upon what was found on the iPads, investigator Galbreath sought a search warrant for the defendant's residence. The magistrate issued the search warrant and it was executed on January 14, 2014. The defendant was still hospitalized at the time.

9

ECF No. 102, at 2. With respect to the search itself, Beeman posits (1) that the warrant to search his home was defective because the evidence which served as the probable cause basis for its issuance was obtained in violation of the Fourth Amendment, and (2) that therefore any devices collected as a result of the tainted warrant are suppressible fruit of the poisonous tree. In its motion for summary judgment, the government roundly disputes Beeman's characterization of the events as described above in the November 14 state court motion and by Beeman himself during the October 3, 2018 evidentiary hearing. More to the point, the government contends that Beeman has failed to show that Cook's performance was deficient or that he suffered any resulting prejudice.

In order to resolve Beeman's claim of ineffective assistance of counsel, the court need not, of course, resolve the Fourth Amendment claim on the merits, but need only determine whether Cook's decision not to litigate the motion to suppress was reasonable. For the reasons stated below, the court concludes that it was. Indeed, the record before the court demonstrates that not filing a motion to suppress was eminently reasonable under the circumstances. The record also shows that the decision to plead guilty without filing motions to suppress was ultimately made by Beeman after thorough discussions with Cook about what motions they could file were he to choose not to plead guilty.

### E.

In order to state a cognizable claim for relief for ineffective assistance of counsel, Beeman must first demonstrate that Cook's representation fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 686–87. The Supreme Court has affirmatively stated that the "failure to file a suppression motion does not constitute per se ineffective

10

assistance of counsel," Kimmelman, 477 U.S. at 384, and has "recognized that strategies devised after extensively investigating the law and facts relevant to any and all probable options are virtually unassailable." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995); see also Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (explaining that "once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable' and that "[t]actical or reasonable professional judgments are not deficient but a failure to investigate a material matter due to inattention may be deficient" (quoting Strickland, 466 U.S. at 690)); Walker v. United States, No. RWT-14-0536, 2015 WL 4638069, at *2 (D. Md. July 31 2015) (unpublished) (explaining that there is no deficient performance where counsel's determination not to litigate a motion to suppress was reasonable). The reasonableness of counsel's decisions and performance "is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." Kimmelman, 477 U.S. at 385. Lastly, "counsel's ability to make tactical decisions regarding a motion to suppress is such that he may conclude that it is in the defendant's best interest not to file a motion to suppress even if that motion is potentially meritorious." Morris v. United States, 2008 U.S. Dist. LEXIS 89332 (S.D.W.Va. Oct. 27, 2008) (citing Martin v. Maxey, 98 F.3d 844, 848 (5th Cir. 1996)).

It is apparent from the record that it was reasonable for Cook not to file a motion to suppress evidence collected from Beeman's residence on January 14, 2014. Cook's testimony indicates that prior to advising Beeman to plead guilty, Cook carefully considered the range of options available to his client and weighed the risks attendant to each. In October 2015, Beeman found himself at what Cook described as a "fork in the road." The government had

(1) already filed a superseding information charging Beeman with three additional counts related to possession of child pornography on top of the two counts brought in the original indictment and (2) threatened to bring additional charges. Cook explained that Beeman was given an offer that gave the court the option of a 60-month floor at sentencing, but that prosecutors made it clear that if he proceeded with motions to suppress, they would bring a superseding indictment with more serious charges. Cook recalled that the additional charges with which Beeman was threatened included production of child pornography and other charges related to "actual abuse" of minors. Cook described these charges as much more serious and as carrying very significant sentences. Unlike those charges to which Beeman ultimately pled guilty, all but one of which carried no mandatory minimum, production of child pornography alone carried a 15-year mandatory minimum with a maximum sentence of 30 years. In the agreement negotiated by Cook, only the transportation of child pornography carried a mandatory minimum of 60-months. Cook explained in his testimony that the prospect of the government bringing more charges loomed large in his discussions with Beeman and militated strongly against pursuing motions to suppress. Cook advised Beeman that in pleading guilty to only the possession and transportation charges, he maintained the option of an "open sentencing" where the court decided the sentence unencumbered by substantial mandatory minimums. In other words, the decision to forego filing motions to suppress was intended to limit Beeman's exposure to significant mandatory minimums, thereby preserving what Cook described as a "pretty low floor" for the court at sentencing.

F.

The decision not to file motions to dismiss was all the more reasonable because Cook did not believe that any such motion would be successful. In Sexton v. French, the Fourth Circuit held that not only is the "decision whether to file a pre-trial motion to suppress . . . a classic tactical decision," but that counsel is in a "far better position to assess the meritoriousness of . . . pre-trial motion[s] to suppress." 163 F.3d 874, 885 (4th Cir. 1998). Cook's testimony makes clear that he performed precisely such an assessment in this case, ultimately concluding that in light of the circumstances surrounding the search, the better strategy was to plead guilty to avoid additional charges and to preserve both his ability to ask the court for a sentence at the mandatory minimum of 60 months and the court's discretion to render such a sentence. Notwithstanding his advising Beeman to plead guilty, Cook testified that he and Beeman discussed the possibility of filing at least two motions to suppress. The first potential motion, which is the one at issue in this matter, involved the legality of the January 14, 2014 search of Beeman's residence resulting in the seizure of approximately 250 electronic devices. The second potential motion involved a statement Beeman made shortly after his arrest. Cook stated that of these two motions, he believed the latter was more viable than the former. Without wading into the specific reasons Cook gave in his testimony for concluding that a motion to suppress the physical evidence was the weaker of the two, suffice it to say that he appears to have given the Fourth Amendment issue at issue in the January 14 search due consideration and conveyed his sense of its likelihood of succeeding to Beeman. In light of his doubts about whether a motion to suppress would succeed and the seriousness of the charges threatened by the government if

13

such a motion was filed, it was reasonable for Cook to instead counsel Beeman about the plead agreement.

Beeman's claim that Cook did not provide him with "any information" relating to motions to suppress or discuss the subject with him "in any fashion" is contradicted by both his own testimony and Cook's testimony. Beeman stated that Cook both showed him a copy of the motion to suppress filed in state court and expressed his opinion that it was not worth pursuing. That more meaningful discussions regarding the merits and demerits of this motion took place is a fact that Cook reaffirmed multiple times in his testimony. Moreover, Beeman himself stated that he asked Cook a sufficient number of questions during their meetings. For his part, Cook recalled that his client was inquisitive throughout the process, asked lots of questions, and appeared to understand both the potential upside of pleading guilty and the fact that in doing so, he would be precluded from filing suppression motions. Even if the court were not obligated to afford substantial deference to Cook's decision not to file motions to suppress or indulge a strong presumption that his conduct fell within the wide range of reasonable professional assistance, the court would still be satisfied that he provided effective assistance.

In sum, Beeman has provided no evidence that Cook's failure to file motions to suppress was based on anything besides his reasonable, strategic judgment that pursuing this course would redound to his client's benefit in terms of the sentence he would receive. The record establishes that as plea negotiations with prosecutors evolved, Cook began to realize the benefit that would accrue to Beeman by pleading guilty to the possession and transportation charges before production or other abuse charges were brought. In advising

Beeman to plead guilty, Cook not only ensured that the production shoe would never drop, but also that the court was not bound by substantial mandatory minimums during sentencing. Thus, rather than performing deficiently, Cook, at Beeman's behest and with his informed consent, made an objectively reasonable, tactical decision not to file motions to suppress. See Green v. Nelson, 595 F.3d 1245, 1251 (11th Cir. 2010) (explaining that a decision not to file a motion to suppress is a strategic decision, rather than the result of deficient performance, when it involves a weighing of competing positive and negative consequences that may flow to the defendant from a particular choice); see also, Huddleston v. United States, No. 3:11–cv–403, 2012 WL 5949469 (S.D.W.Va. Aug. 29, 2012) (because defendant "made an intelligent decision about whether or not to fight the charges against him . . . his post facto contention that counsel should have pursued the suppression motion is frivolous"). Beeman has not met his "most substantial burden" of showing deficient performance under Strickland.

G.

For the reasons stated, the court **GRANTS** the governments motion for summary judgment, ECF No. 111, and **DISMISSES** Beeman's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 102. Because Beeman has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

Entered: October 18, 2018

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge

15