CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
07/17/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:14-cr-51 |
| ) | |
| ) | By: Michael F. Urbanski |
| MICHAEL STEVEN BEEMAN, ) | Senior United States District Judge |
| ) | |
| Defendant-Petitioner ) | |

## MEMORANDUM OPINION

This matter comes before the court on a motion for sentence reduction, commonly known as "compassionate release," filed by Michael Steven Beeman pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 140. The government filed a response to the motion, to which Beeman has replied. ECF Nos. 149, 154. For the reasons stated herein, the court will **DENY** Beeman's motion for compassionate release.

### I. Background

This case arose when, in January 2014, an acquaintance of defendant Beeman's discovered pictures that "depicted naked post-pubescent minors" on one of Beeman's electronic devices. Statement of Facts, ECF No. 43 at 1–2. The acquaintance reported this discovery to the county sheriff's office and a deputy who viewed the images agreed that the images appeared to depict minors. Id. at 2. Pursuant to a search warrant executed on January 14, 2014, law enforcement officers searched Beeman's residence and discovered more than "250 electronic devices, including VHS tapes, DVDs, desktop computer towers, laptop computers, electronic tablets, external hard drives, and thumb drives." Id. More than 50 of these items showed either "depictions of child pornography" or "evidence that child

pornography had been previously viewed or stored on the device." Id. Thousands of depictions of child pornography were found on Beeman's various devices, including images of prepubescent minors and prepubescent minors engaged in sex acts. Id. Forensic analysis suggested that Beeman had deleted various images and videos of child pornography from certain of these electronic devices. Id. at 3. Also found during the search was "a portable high-8 diskman" with a tape of Beeman engaging in sexually explicit conduct with an individual known as Minor A, with the tape being circumstantially dated to the late 1980s. Id. at 2–3. Beeman's personal relationship with Minor A developed while Beeman was stationed at Patrick Air Force Base in Brevard County, Florida, Minor A being the child of a parent who was stationed at the same base. Id. at 1.

Beeman admitted to law enforcement that he had engaged in sexual conduct with Minor A and recorded the conduct on VHS tape and later transferred it to the high 8 tape that was recovered by law enforcement at his residence. Beeman also admitted to engaging in sexual activity with two other minor boys. Id.

On October 6, 2015, Beeman was charged in a superseding information on five counts. Count One charged Beeman with knowingly transporting child pornography in interstate or foreign commerce in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1). Counts Two through Four charged Beeman with three matters, each of which contained child pornography that had been transported in interstate commerce and contained at least one distinct depiction involving a minor who had not yet attained 12 years of age, in violation of 18 U.S.C. §§ 2552A(a)(5)(B) and 2252A(b)(2). Id. at 1–2. Count Five charged Beeman with possessing a matter which contained child pornography that had been transported in interstate commerce,

2

and each matter contained one or more images that were different than the images referenced in Counts One through Four of the Superseding Information, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Superseding Information, ECF No. 35.

On the same day the Superseding Information was filed, Beeman entered into a plea agreement, pleading guilty to all five counts charged in the Superseding Information. On July 21, 2016, Beeman was sentenced to a 360-month term of imprisonment to be followed by a life term of supervised release. In addition, Beeman was ordered to pay two victims $72,713.31 in restitution. Am. J., ECF No. 84.

Beeman filed a motion to vacate under 28 U.S.C. § 2255 on April 28, 2017, and, following a response by the government, this court dismissed the motion on October 18, 2018. ECF Nos. 103, 111, 124, 125. Beeman appealed the dismissal to the United States Court of Appeals for the Fourth Circuit, ECF No. 126, which dismissed the appeal on February 26, 2019. ECF Nos. 133, 134. On May 31, 2019, Beeman petitioned the Supreme Court of the United States for a writ of certiorari which was denied on October 7, 2019. ECF Nos. 136, 137. Beeman currently is incarcerated at Federal Correctional Institution Edgefield and has a projected release date of September 23, 2039.[1]

On October 26, 2024, Beeman moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and USSG § 1B1.13(b). ECF No. 140. Beeman contends that he qualifies for relief under both USSG §§ 1B1.13(b)(2) and (b)(5), and that relief is warranted due to (1) his health and deteriorating medical condition; and (2) the Bureau of Prison's (BOP) failure to

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Michael Steven Beeman") (last viewed September 23, 2039).

3

provide adequate medical care earlier in his term of incarceration. In addition, he argues that the 18 U.S.C. § 3553(a) factors weigh in favor of a sentence reduction. ECF No. 140, at 11–17.

## II. Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, courts may modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (a) extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Therefore, the statute requires that the court consider (1) whether Beeman exhausted his administrative remedies; (2) if so, whether extraordinary and compelling reasons warrant a reduction in Beeman's sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### A. Exhaustion

Under United States v. Muhammad, 16 F. 4th 126 (4th Cir. 2021), the threshold requirement for obtaining relief is satisfied "if a defendant requests the Bureau of Prisons to

4

bring a motion [for compassionate release] on their behalf and <u>either</u> fully exhausts all administrative rights to appeal the Bureau's decision <u>or</u> waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Here, Beeman requested relief from the warden of his facility on September 5, 2024, ECF No. 141 at 2–3, and filed his motion for a sentence reduction on October 26, 2024. ECF No. 140. The government does not contest exhaustion. Resp., ECF No. 149 at 11 n.1. Accordingly, the court finds that Beeman has exhausted his administrative remedies.

## B. Extraordinary and Compelling Reasons

### (1) Deterioration Because of the Aging Process

Under USSG § 1B1.13(b)(2), extraordinary and compelling reasons for a sentence reduction may exist where the "defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." In Beeman's case, neither subsection (A) nor (C) is in dispute, as Beeman currently is 71 years old, and has served more than 11 years of his term of imprisonment. Mot., ECF No. 140 at 3 n.1; Sent. Monitoring Data, ECF No. 158-3. As to subsection (B)'s requirement, Beeman argues that "he is experiencing a serious deterioration in physical health because of the aging process including the loss of one kidney and chronic kidney disease in the other." Mot., ECF No. 140, at 12. He also alleges that problems with his back warrant a finding that he is entitled to a sentence reduction. Beeman Statement, ECF No. 141-1 at 10; Reply, ECF No. 154 at 4.

The Government counters that Beeman fails to satisfy this requirement, since "it covers physical deterioration attendant to aging rather than a disease or condition." Resp.,

5

ECF No. 149 at 13. Beeman responds that "[a]ging and medical issues that arise during aging cannot be artificially separated from the deterioration of physical health caused by aging." Reply, ECF No. 154 at 3.

The guidelines do not describe what it means for an inmate to experience a "serious deterioration in physical or mental health because of the aging process," but courts in the Fourth Circuit have found "serious deterioration" in the face of serious medical impairments. In United States v. Malone, 57 F.4th 167, 170, 175 (4th Cir. 2023), the court found that a 69-year-old defendant showed that his ailing health established an extraordinary and compelling reason for a sentence reduction. There, the defendant had suffered from colon cancer, which was in remission, but he lived with a colostomy bag permanently affixed to his body. Over the years, the defendant had five additional surgeries related to the colostomy bag, which in turn caused rashes, bleeding, thickening of the skin, and numerous infections. The bag often smelled foul and on one occasion "blew off from its port," spewing feces across the room. In addition, the defendant was diagnosed with cystic kidney disease, hernia, malignant neoplasm of the rectum, hypertension, morbid obesity, neoplasm of uncertain behavior, hyperlipidemia, and disorders of the liver. The inmate also suffered from other chronic conditions including nocturia, the removal of a mass from his left chest wall, type II diabetes, a dysfunction in his heart ventricle, pulmonary regurgitation, obstructive sleep apnea, hypertension, hyperlipidemia, dyslipidemia, and dental decay and loss. Id. at 170. The court found that the combination of conditions "undoubtedly establish[ed] extraordinary and compelling reasons for release." Id. at 175.

Similarly, in United States v. Dawson, No. ELH-94-0010, 2024 WL 3455002, at *11 (D. Md. July 17, 2024), the court found that an 84-year-old defendant who had served 30 years was experiencing a serious deterioration in his physical health because of the aging process when medical records described him as "not safe to ambulate," he had not walked since 2019, and he required assistance with all mobility, including showering. See also United States v. Hagen, No. 3:08-CR-00093-FDW-DCK, 2024 WL 3371044, at *4 (W.D.N.C. July 10, 2024) (granting sentence reduction for 69-year-old defendant who demonstrated a "trend of seriously deteriorating health related to the aging process" based on high cholesterol, high blood pressure, a severe degenerative joint disorder in his lumbar spine, a corneal scar and opacity of vision, and periapical abscesses).

Conversely, in United States v. Moore, No. 3:99-00090, 2024 WL 5111959, at *3 (S.D.W.V. Dec. 13, 2024), the court denied compassionate release where the defendant had benign prostatic hyperplasia, hyperlipidemia, type II diabetes, glaucoma, erosive osteoarthritis, and hypertension, but did not provide evidence that he was experiencing a serious deterioration in his health. Also, in United States v. Evins, No. 3:23cr81, 2025 WL 87959, at *6–7 (E.D. Va. Jan. 13, 2025), the court denied compassionate release where a defendant had prostate cancer, benign prostatic hyperplasia, degenerative disc disease in his thoracic spine, type II diabetes, hypertension, a bladder disorder, sleep apnea, cardiovascular disease, nocturia, and a recent foot surgery, because he failed to show that he was experiencing a serious deterioration in his health. See also United States v. Isom, No. 1:03-CR-241, 1:03-CR-242, 2024 WL 2846467, at *3 (M.D.N.C. June 5, 2024) (denying compassionate release for defendant suffering from stage III chronic kidney disease, back pain, and hypertension, when

his kidney disease was not significantly worsening, his medical care providers prescribed a delayed release pain medication for his back pain, and the record showed no recent health encounters.)

In Beeman's case, he submitted medical records dated September 9, 2024, showing that his left kidney was removed in June 2023 and that he had a stone of an undetermined size in his right renal pelvis. Med. R., ECF No. 158-2 at 1. He reported that he was doing well overall, but still having a little bit of intermittent pain and discomfort. He had not had any gross hematuria but had been treated for an infection since his last visit to the medical department. His urine had been grossly clear for the past couple of weeks. Id. The doctor recommended extracorporeal shock wave lithotripsy (ESWL) to treat the stone in his right kidney.[2] The procedure was performed on September 10, 2024, and a stent also was placed in his right kidney. Id. at 4.

A nurse practitioner requested images of Beeman's spine for further evaluation of severe C6/C7 and L2-3 degenerative disc changes with recent complaints of acute neck and low back pain following an alleged assault on June 22, 2024. Med. R., ECF No. 158-1 at 1. Images of his lumbar spine showed no acute compression fracture, but progressive multilevel degenerative disc changes that were severe at L2-3. His moderate lower lumbar spine facet arthrosis was grossly unchanged. Images of his cervical spine showed no fracture, but degenerative disc disease described as severe at C6/C7, moderate at C5/C6, and mild at

---

[2] ESWL is a non-invasive procedure that uses shock waves to break down stones in parts of the urinary system, in the pancreas, and in the bile ducts. https://www.hopkinsmedicine.org/health/conditions-and-diseases/kidney-stones/extracorporeal-shock-wave-lithotripsy-eswl (last viewed July 1, 2025).

8

C4/[C5] and C7/T1. The images further showed uncovertebral joint arthrosis in Beeman's mid to lower cervical spine. Id.

The medical records also indicate that Beeman was prescribed a C-PAP machine in March 2021, presumably to treat sleep apnea. Beeman is assigned a lower bunk and as of August 8, 2024, he was eligible to possess a wheeled walker. He has no work restrictions. Id. at 2.[3]

On this record, the court does not find that Beeman has made a showing that he is suffering from a serious deterioration in physical or mental health because of the aging process. His current kidney problems do not appear to have caused a serious deterioration in his physical health as he reported only a "little bit" of intermittent pain and discomfort to his health care provider. Med. R., ECF No. 158-2 at 1. On examination, Beeman was described as "well developed, well nourished, alert and cooperative and appear[ed] to be in no acute distress." Id.

In addition, while the record shows a diagnosis of degenerative disc disease in his spine, it appears that the condition was made worse when he was assaulted by his cellmate. See Beeman's Statement, ECF No. 141-1 at 10 ("The back problems were exacerbated by an assault on myself in late June 2024 by a cellmate.... His assault…brought about the need for me to now have to use a wheeled walker to stay mobile.") Beeman no doubt suffers pain in his back, but there is no evidence that he has undergone a serious deterioration in his physical health because of the aging process. Rather, his current back problems appear to be the result

---

[3] Beeman also asserts that he suffers from uncontrolled hypertension, severe sleep apnea, glaucoma, post-traumatic stress disorder, and atrial fibrillation, ECF No. 141-1 at 10–12, but did not submit medical records to support these diagnoses, except for the provision of a C-PAP machine.

9

of an assault by his cellmate. As unfortunate as that is, such circumstances do not provide a basis for a sentence reduction.

Moreover, Beeman appears to be able to carry on his daily activities and he actively helps other inmates in various ways. Beeman teaches GED classes to other inmates and tells the court he would like to be released from prison to continue to help others to improve their lives. Letter, ECF No. 141-1 at 2–3. One of Beeman's fellow inmates who wrote a letter on his behalf stated that at one point, Beeman tutored four GED classes for six hours per day and spent his evenings and weekends preparing other inmates to take the GED. Letter, ECF No. 141-3 at 2. Beeman also has helped inmates with federal tax-related issues. Id. The inmate noted that Beeman's medical challenges have slowed him down and impacted his mobility. Id. Other inmates wrote similar letters for Beeman, expressing gratitude for the help he has given them in multiple ways, but also describing the medical issues he has had to face over the last several years. Letters, ECF No. 141-3 at 2–14. Thus, while Beeman clearly has medical issues, overall, his activities while incarcerated are not those of a person who is experiencing a serious deterioration in his physical or mental health because of the aging process. Accordingly, Beeman has failed to show that he is entitled to a sentence reduction under USSG § 1B1.13(b)(2).

### (2) Catchall Provision

Beeman also argues that he is entitled to relief under USSG § 1B1.13(b)(5), which provides that "other reasons" may constitute extraordinary and compelling circumstances where the "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs

10

(1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." USSG § 1B1.13(b)(5). His argument is based on his allegation that poor medical care he received while incarcerated resulted in the loss of his left kidney and contributed to his current health problems.

According to Beeman, he has suffered from kidney stones since 2002 but began experiencing severe pain in 2020. Mot., ECF No. 140 at 13. Following an ultrasound in 2020, a stone was observed in Beeman's left kidney that was too large to pass. Id. While a dye test was ordered for early September 2021, such test was cancelled and not rescheduled. Id. During this period, Beeman was occasionally urinating blood, having "sandstorm"-like urine, and complaining of extreme pain. Id. at 13–14.

In April 2022, Beeman was taken to an outside hospital where he was told that a stone was blocking the channel to his bladder, as had been suspected 17 months previously. He was told that the kidney needed to be removed, but was infected, requiring postponement of the surgery. Beeman was returned to the prison. Id. at 14. In late 2022, Beeman learned that at some point, a stent had been placed between the left kidney and bladder. He was on antibiotics for more than a year. Id.

On June 13, 2023, Beeman was returned to the outside hospital and the kidney was removed. An additional surgical procedure had to be performed to retrieve the stent. Id. He spent five days in the hospital before returning to prison. Ten days later, after running a fever, having cloudy urine, and bouts of vomiting and dizziness, he was returned to the hospital where he was diagnosed and treated for sepsis. Id.

11

Beeman argues that from September 2021 through April 2022 he was "without the appropriate standard of care," and he was "without the appropriate standard of care from April 2022 through June 2024, when a stent that was not designed to stay in the body that long became so calcified that it required additional surgery that likely led to the sepsis that could have taken Beeman's life." Id. at 15. He also argues that "the lack of proper care during these periods certainly aided in the deterioration of his health" because he has only one kidney and it is diseased. Id.

Beeman asserts that the purported lack of care he received from September 2021 through June 2024 is similar in gravity to the condition described at USSG §§ 1B1.13(b)(1)(C). That provision provides that a defendant may show an extraordinary and compelling reason for a sentence reduction if he can show that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. Beeman concedes that since the summer of 2024 he has been receiving adequate care but argues that the period in which he claims he did not receive adequate care left him "much less healthy," and resulted in his losing an organ and coming close to death. Mot., ECF No. 140 at 13–15.

Beeman's argument fails for three reasons. First, his allegation that the BOP did not provide adequate care from 2021 through 2024 is wholly conclusory and unsupported by evidence. He submitted no medical records to support his description of what happened to him during that time, much less any evidence to support a finding that a lack of care on the part of the BOP resulted in injury to him. "The defendant seeking compassionate release bears the burden of showing that extraordinary and compelling reasons warrant a sentence

12

reduction." United States v. Melvin, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. 2023) (per curiam)). Beeman has not met his evidentiary burden here.

Second, to show that he is entitled to relief under USSG §§ 1B1.13(b)(1)(C), Beeman would have to show that his condition is similar in gravity to the conditions set forth at § 1B1.13(b)(1)-(4). It is a difficult standard to meet. See United States v. Anderson, No. 2:98cr143, 2025 WL 1644020, at *6 (E.D. Va. June 10, 2025) (internal citations omitted) (finding that to qualify for relief under § 1B1.13(b)(5), circumstances must be similar to a terminal medical condition, dire family emergency, or abuse at the hand of a custodian). Beeman asserts that actions taken by BOP medical staff resulted in his having stage III chronic kidney disease, which at his current age of 71 gives him a life expectancy of 76. Mot., ECF No. 140 at 11 n.4.[4] He alleges that the substandard care he received for his kidney ailment resulted in pain, additional surgery, and an infection. However, even assuming the truth of his allegations, those conditions do not rise to the level of gravity contemplated by the conditions set forth at § 1B1.13(b)(1)-(4), because, as set forth above, Beeman continues to function at a high level.

Finally, remedies exist for inmates who believe they are being denied medical care or have received substandard care, including the filing of a civil lawsuit for violation of constitutional rights, or a claim under the Federal Tort Claims Act for damages. Beeman is trying to fashion a new remedy for the alleged act of medical malfeasance—release from

---

[4] If Beeman believes this to be true, it is unclear why he did not seek relief under § 1B1.13(b)(1)(A), which provides for compassionate release when a person can show that he is suffering from a terminal illness, including end-stage organ disease. He did not seek relief under that subsection, nor provide any evidence regarding the prognosis related to his kidney disease.

incarceration—which is not contemplated by either 18 U.S.C. § 3582(c)(1)(A) or USSG § 1B1.13.

For the above stated reasons, Beeman cannot make out a claim that his health issues present an extraordinary and compelling reason for a sentence reduction. In addition, as discussed below, even if Beeman could make out such a claim, the 18 U.S.C. § 3553(a) factors preclude relief.

### C. 18 U.S.C. § 3553(a) Factors

In addition to not presenting evidence of an extraordinary and compelling reason sufficient to warrant a sentence reduction, the § 3553(a) factors weigh against a sentence reduction for Beeman. The factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by

act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement —

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, in January 2014 Beeman told law enforcement officers in a post-Miranda interview that he had been collecting child pornography for the past fifteen or twenty years.[5] He also identified three minor boys whom he had sexually abused, starting in 1975. Two of the three boys were brothers who resided with Beeman during a custodial relationship. Beeman produced between five and six videos of himself sexually abusing one of the children. Beeman abused the third child thirty or forty times from 1986 to 1989. Pre-Sentence Investigation Report (PSR), ECF No. 75 ¶¶ 6, 7. Beeman possessed 6,594 videos and 4,770 images of child pornography, including images of bondage, erotica, and bestiality. Several depictions included prepubescent minors and post-

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

pubescent minors engaged in sex acts. Id. ¶ 8. The facts and circumstances of this offense are horrific beyond description and weigh heavily against a sentence reduction.

Turning to the history and characteristics of the defendant, Beeman served in the United States Air Force from 1971 to 1994, was awarded several medals, and received an honorable discharge. He later worked for the federal government in several different positions. Id. ¶¶ 54–58. It was during these same years that he sexually abused three children by grooming them and gaining their trust and also during this period that he amassed his huge collection of child pornography. Since being incarcerated, Beeman has taken several classes and has tutored many inmates in obtaining their GEDs. Inmates who wrote letters on his behalf describe him as being helpful and encouraging to them as they pursued their education and worked at bettering themselves. In a letter Beeman wrote to the court, he expressed great remorse for his actions and said that he never wants to harm anyone again and is committed to living a law-abiding life. Letter, ECF No. 141-1 at 2–4. Neither party submitted evidence of Beeman's institutional history.

The court finds that taken as a whole, Beeman's history and characteristics weigh against a sentence reduction. The court credits Beeman's expression of remorse and the efforts he has made at tutoring and encouraging his fellow inmates and acknowledges that people should not be judged solely on their worst acts. Nevertheless, the fact that Beeman willingly participated in cruel and vicious offenses against small children over decades outweighs the good that he may have done during his career or since he has been incarcerated.

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate

16

deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that Beeman's 360-month sentence continues to be adequate and effective given the facts and nature of his crimes.

The seriousness of Beeman's offense, and the damage he caused to children, cannot be overstated and any shorter sentence would not provide just punishment. Moreover, the court has serious concerns regarding the need to protect the public from further crimes of the defendant. While it is true that Beeman will serve a life term of supervised release when he leaves prison, for many years he was able to manipulate and sexually assault children right under their parents' noses. And while he has vowed to never harm another person, the record does not indicate that he has received any treatment for sex offenders since he has been incarcerated. The court finds that the risk that Beeman will harm another child, either by sexual abuse or by viewing or distributing child pornography, weighs against a sentence reduction.

Looking at the kinds of sentences available and the applicable guidelines range, Beeman faced a sentencing range of 5 to 90 years. PSR, ECF No. 75 ¶ 61. His guidelines range was 210 to 262 months. Tr. of Sent. H'r'g, ECF No. 88 at 5, 21–24. The court varied upward to 360 months based on the fact that Beeman had repeated sexually abused two children and videotaped the abuse of one of the victims. Despite expressing regret for his actions, he had continued to victimize children by collecting images of child pornography including images of children under the age of twelve and images depicting sadistic and masochistic acts inflicted on children. The court found that Beeman's decades long involvement in the abuse of children required an upward variance in his sentence. In addition, to avoid unwarranted sentencing

disparities, the court found that an upward variance was necessary to reflect both Beeman's hands-on degradation of his minor victims and his support for the violation of other children by collecting pornographic images. Statement of Reasons, ECF No. 74 at 4. The court finds that Beeman's sentence of 360 months falls within the lower end of the statutory sentencing range and the upward variance continues to be warranted in his case.

### III. Conclusion

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is not warranted in Beeman's case. Beeman has not shown that extraordinary and compelling reasons warrant a sentence reduction, and even if he had, the § 3553(a) factors weigh against a sentence reduction. Beeman's sentence of 360 months continues to be the appropriate sentence in this case. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Beeman's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public. Accordingly, Beeman's motion for a sentence reduction, ECF No. 140, is **DENIED**.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: July 16, 2025

Michael F. Urbanski
Senior United States District Judge